**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

CHRISTOPHER CATALDIE                                                                      CIVIL ACTION

VERSUS                                                                                       19-195-SDD-EWD

SEASIDE HEALTHCARE SYSTEMS,
LLC, ET AL.

### RULING

This matter is before the Court on the *Motion to Dismiss for Lack of Subject Matter Jurisdiction, Lack of Standing and No Cause of Action*[1] filed by Defendants Seaside Healthcare Systems, LLC ("Seaside") and Eric Gintoli ("Gintoli") (collectively "Defendants"). Plaintiff Christopher Cataldie ("Plaintiff") filed an *Opposition*.[2] For the following reasons, Defendants' *Motion to Dismiss*[3] shall be GRANTED in part and DENIED in part as explained below.

**I.     FACTUAL BACKGROUND**[4]

The facts alleged by Plaintiff are as follows. Seaside entered into a contract on July 1, 2018 with Christopher Cataldie, NP, LLC ("Cataldie LLC"), an LLC in which Plaintiff is a member. The contract employed Plaintiff as a nurse practitioner and, among other things, provided compensation rates for Plaintiff that differed depending on whether Plaintiff worked on weekdays or weekends. Plaintiff alleges that he "routinely worked in

---
[1] Rec. Doc. 9.
[2] Rec. Doc. 17.
[3] Rec. Doc. 9.
[4] The Court draws the factual background from Plaintiff's *Complaint*. Rec. Doc. 1.
59355

excess of 40 hours in a workweek" yet was never paid overtime rates, despite allegedly being a non-exempt employee under the Fair Labor Standards Act ("FLSA").[5] Plaintiff ceased work for Seaside on January 20, 2019 and sent a letter on February 8, 2019 demanding payment of wages.

On April 3, 2019, Plaintiff filed suit against Defendants and Robert V. Blanche MD, LLC (allegedly also an employer of Plaintiff along with Seaside), seeking to recover unpaid wages and penalty wages in addition to attorney's fees and court costs. Plaintiff claims that the Defendants' failure to pay wages according to overtime rates violated the FLSA; Plaintiff also asserts a breach of contract claim and a claim under the Louisiana Penalty Wage Act ("LPWA"). Defendants filed the present *Motion to Dismiss* seeking to dismiss Plaintiff's claims under the FLSA. Plaintiff filed his *Opposition* on July 8, 2019.

## II. LAW AND ANALYSIS

### A. Standing

In attacking Plaintiff's FLSA claim, Defendants contend that Plaintiff lacks standing to assert a claim on behalf of the corporate entity of which Plaintiff is a member because Plaintiff himself is not a party to the employment contract at issue.[6] In other words, Defendants argue that the contract is between Seaside and Cataldie LLC; Cataldie in his individual capacity is a third party.[7] In support of this assertion, Defendants rely upon a case involving a breach of contract claim.[8] The Defendants' argument as to Plaintiff's standing to bring a FLSA claim presents the issues of (1) whether an individual member

---

[5] Rec. Doc. 1 ¶ 8.
[6] Rec. Doc. 10-1 p. 7-9.
[7] *Id.*
[8] *Id.* p. 7 (citing *Cooper v. Melancon*, 2007 WL 9711056 at *5 n. 6 (M.D. La. 2007)).
59355

of a corporate entity can assert a right arising from a contract claim when the corporate entity is a party to the contract and not the individual member, and (2) whether the FLSA provides corporate entities with a right of action.[9] These issues are left wholly unaddressed by Plaintiff; rather, Plaintiff addresses Article III standing and argues that an employment relationship existed between the parties.[10]

First, while Defendants are correct that "[i]t is axiomatic that individuals who are not parties to a contract cannot sue to enforce rights under the contract,"[11] Plaintiff's FLSA claim is entirely separate from Plaintiff's breach of contract claim. The FLSA provides individual employees with a right of action; § 216(b) provides that "[a]n action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer . . . by any one or more employees for and on behalf of him or themselves."[12] "The FLSA imposes a legal duty on every employer to pay overtime to non-exempt employees and . . . explicitly establishes a private right of action to enforce that duty."[13] Therefore, if Plaintiff has alleged facts supporting the elements of the cause of action, then Plaintiff has correctly filed a lawsuit against Defendants in his individual

---

[9] *See* Rec. Doc. 10-1 p. 7.
[10] *See* Rec. Doc. 14 p. 4-5.
[11] Rec. Doc. 10-1 p. 7.
[12] 29 U.S.C. § 216(b).
[13] *Texas v. Dept. of Labor*, 929 F.3d 205, 212 (5th Cir. 2019). *See also U.S. for Benefit and on Behalf of Glynn v. Capeletti Bros., Inc.*, 621 F.2d 1309, 1316 (5th Cir. 1980) (explaining that § 216(b) "provides a right of action to enforce FLSA"); *Rodriguez v. Alsalam, Inc.*, 2017 WL 699820 at *2 (E.D. La. 2017) ("Section 216(b) of the FLSA affords workers a right of action for violations of these parameters."); *Chapman v. LHC Group, Inc.*, 126 F.Supp. 3d 711, 720 (E.D. La. 2015) ("FLSA also creates a private right of action for employees when these rights are violated."); *Hilliard v. Jefferson Parish*, 991 F.Supp. 2d 769, 775-76 (E.D. La. 2014) (citing *Kendall v. City of Chesapeake, Va.*, 174 F.3d 437 (4th Cir. 1999)) (discussing how FLSA's authorization of a private right of action forecloses enforcement of FLSA claims through Section 1983 actions).

capacity. Second, because Plaintiff has presented a FLSA claim in his individual capacity, it is irrelevant whether the FLSA provides corporate entities with a right of action.

Standing is a threshold question in every case; "[i]f a party lacks standing to bring a matter before the court, the court lacks jurisdiction to decide the merits of the underlying case."[14] It is unclear whether Defendant is challenging Plaintiff's standing under Article III or under principles of prudential standing. Whereas Article III standing pertains to an "irreducible constitutional minimum of standing,"[15] prudential standing is a matter of statutory standing and essentially involves statutory interpretation.[16]

Article III standing requires that Plaintiff must allege facts to establish (1) an injury-in-fact, (2) that the injury is "'fairly traceable' to the actions of the defendant," and (3) that the injury will likely be redressed by a favorable decision.[17] Thus, Defendants' challenge to Plaintiff's standing in the framework of Article III "turns on whether [Plaintiff] has sufficiently alleged that he was 'employed' by [Defendants], as that concept is interpreted in the context of FLSA."[18] Prudential standing, on the other hand, requires that Plaintiff must allege facts demonstrating that Plaintiff falls within the class of persons that has a right to sue under the FLSA.[19] This "zone-of-interests test" is effectively a matter of statutory interpretation, requiring the Court to determine whether the FLSA encompasses the Plaintiff's claim.[20] Because the FLSA requires the existence of an employment

---

[14] *United States v. AVX Corp.*, 962 F.2d 108, 113 (1st Cir. 1992).
[15] *Lujan v. Defenders of Wildlife*, 504 U.S. 55, 560 (1992).
[16] *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127-28 (2014).
[17] *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).
[18] *Cavallaro v. UMass Memorial Health Care, Inc.*, 971 F.Supp. 2d 139, 146 (D.Mass. 2013)
[19] *Cell Science Systems Corp. v. La. Health Serv. & Indemnity Co.*, No. 18-31034, --- F.Appx ---, ---, 2020 WL 1285033 at *2 (5th Cir. 2020) (citing *Lexmark*, 572 U.S. at 127-28).
[20] *See Id.* (citing *Superior MRI Servs., Inc. v. Alliance Healthcare Servs., Inc.*, 778 F.3d 502, 506 (5th Cir. 2015)).

59355

relationship, evaluation of Defendants' standing challenge under prudential standing principles depends on whether Plaintiff has alleged facts sufficient to support the existence of an employer-employee relationship with Defendants.

Therefore, regardless of the framework used by Defendants to challenge Plaintiff's standing, the Court must determine whether there are sufficient facts alleged in the Complaint to plausibly plead an employment relationship. Bearing this in mind, the Court now turns to the legal standard for a standing challenge. Because standing is a jurisdictional prerequisite,[21] if a plaintiff lacks standing to bring a claim, the Court lacks subject matter jurisdiction over the claim, and dismissal under Rule 12(b)(1) is appropriate.[22]

### B. Rule 12(b)(1)

"When a motion to dismiss for lack of jurisdiction 'is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits.'"[23] If a complaint could be dismissed for both lack of jurisdiction and for failure to state a claim, "'the court should dismiss only on the jurisdictional ground under [Rule] 12(b)(1), without reaching the question of failure to state a claim under [Rule] 12(b)(6).'"[24] The reason for this rule is to preclude courts from issuing advisory opinions and barring courts without jurisdiction "'from prematurely dismissing a

---

[21] *Crenshaw–Logal*, 436 Fed.Appx. at 308 (citing *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 101 (1998); *Xerox Corp. v. Genmoora Corp.*, 888 F.2d 345, 350 (5th Cir. 1989)).

[22] *Whitmore v. Arkansas*, 495 U.S. 149, 154–55 (1990); *Chair King, Inc. v. Houston Cellular Corp.*, 131 F.3d 507, 509 (5th Cir. 1997).

[23] *Crenshaw–Logal v. City of Abilene, Texas*, 436 Fed.Appx. 306, 308 (5th Cir. 2011)(quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); s*ee also Randall D. Wolcott, MD, PA v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011); FED.R.CIV.P. 12(h)(3)).

[24] *Crenshaw–Logal*, 436 Fed.Appx. at 308 (quoting *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977)).

case with prejudice.'"[25] Accordingly, the Court first considers Defendants' Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction.

The party seeking to invoke federal jurisdiction bears the burden of showing that standing existed at the time the lawsuit was filed.[26] In reviewing a motion under 12(b)(1) for lack of subject matter jurisdiction, a court may consider (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.[27]

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) is characterized as either a "facial" attack, *i.e.*, the allegations in the complaint are insufficient to invoke federal jurisdiction, or as a "factual" attack, *i.e.*, the facts in the complaint supporting subject matter jurisdiction are questioned.[28] A 12(b)(1) Motion unsupported by evidence is analyzed as a facial attack[29] and the allegations in the complaint are taken as true.[30]

Here, Defendants have mounted a facial attack; although Defendants have attached accompanying exhibits as evidence, Defendants' argument does not relate to any underlying factual dispute. Rather, as discussed *supra*, Defendants' *Motion* raises a question of law—specifically, whether there existed an employment relationship—that

---

[25] *Crenshaw–Logal*, 436 Fed.Appx. at 308 (citing *Steel Co.,* 523 U.S. at 101; *Ramming*, 281 F.3d at 161).
[26] *M.D. Anderson Cancer Ctr. v. Novak*, 52 S.W.3d 704, 708 (Tex. 2001); *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001); *Ramming*, 281 F.3d at 161.
[27] *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981).
[28] *In re Blue Water Endeavors, LLC*, Bankr. No. 08–10466, Adv. No. 10–1015, 2011 WL 52525, *3 (E.D. Tex. 2011) (citing *Rodriguez v. Texas Comm'n of Arts*, 992 F.Supp. 876, 878–79 (N.D. Tex. 1998), *aff'd*, 199 F.3d 279 (5th Cir. 2000)).
[29] *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).
[30] *Blue Water*, 2011 WL 52525 at *3 (citing *Saraw Partnership v. United States*, 67 F.3d 567, 569 (5th Cir. 1995)).

59355

Page 6 of 20

tests the adequacy of the Plaintiff's *Complaint.* Defendants' 12(b)(1) *Motion to Dismiss* will be analyzed by the Court as a facial attack, and the allegations in the *Complaint* shall be accepted as true.

Plaintiff contends in the *Complaint* that the Court possesses subject matter jurisdiction under 28 U.S.C. § 1331.[31] "[A] cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law."[32] "When a federal claim appears on the face of the complaint, '[d]ismissal for lack of subject matter jurisdiction is only proper in the case of a frivolous or insubstantial claim,'"[33] and "dismissal for want of jurisdiction is disfavored as a matter of policy."[34]

Plaintiff presents a claim under the FLSA.[35] Defendants do not argue that Plaintiff's federal claims are frivolous or insubstantial. Moreover, the substantive challenges presented by Defendants—challenges to Plaintiff's standing and to the alleged employment relationship—pertain to legal determinations at the core of Plaintiff's FLSA claims rather than subject matter jurisdiction.[36] Courts have categorized challenges to alleged employment relationships as challenges to the elements of the cause of action rather than issues of standing.[37] Consequently, Defendants' *Motion* is therefore construed

---

[31] Rec. Doc. 1 ¶ 2.
[32] *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 163 (1997).
[33] *Young v. Hosemann*, 598 F.3d 184, 188 (5th Cir. 2010) (quoting *Bell v. Health-Mor*, 549 F.2d 324, 344 (5th Cir. 1977)). *See also Clark v. Tarrant Cty., Tex.*, 798 F.2d 736, 741-42 (5th Cir. 1986) ("Where the factual findings regarding subject matter jurisdiction are intertwined with the merits, . . . the case should not be dismissed for lack of subject matter jurisdiction unless the alleged claim is immaterial or is wholly insubstantial and frivolous.").
[34] *Id.* (citing *Williamson v. Tucker*, 645 F.2d 404, 415-16 (5th Cir. 1981)).
[35] 29 U.S.C. § 201, *et seq.*
[36] *See Hopkins v. Cornerstone America*, 512 F.Supp. 2d 672, 681 (N.D. Tex. 2007).
[37] *See Rodriguez-Meza v. Venegas*, 2018 WL 7348864 at *24 n.9 (W.D. Tex. 2018) ("The Court . . . finds that employer status is an element of a cause of action under the FLSA , not an issue of standing."); *McNeal v. Markum Enterprises, LLC*, 2017 WL 4249402 at *3 (E.D. Tex. 2017) ("Thus, the Court 'proceeds under Rule 12(b)(6) because Defendants' challenges in this case are attacks on the merits of [McNeal's] claims rather than on the Court's jurisdiction.') (quoting *Short v. Glover*, 2003 WL 22479620 59355

as a Rule 12(b)(6) motion to dismiss and shall be considered under that standard.[38] As to Plaintiff's state law claims, the Court defers the determination of supplemental jurisdiction for reasons discussed below.

### C. Rule 12(b)(6)

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[39] The Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[40] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[41]

In *Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[42] A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid

---

at *1 (E.D. Tex. 2003)); *Heckert v. 2495 McCall Rd. Corp.*, 2008 WL 508079 at *4 (M.D. Fla. 2008) ("Assuming arguendo that the determination of whether Defendant Kaplan is an employer under the FLSA could properly be construed as a challenge to the Court's subject matter jurisdiction, the Court concludes that such a challenge is inextricably intertwined with the merits of Plaintiff's claim.").

[38] *See Id.*; *Harris v. Coastal Offshore, Inc.*, 2011 WL 2457922 at *2 (considering a 12(b)(1) motion under Rule 12(b)(6) based on the same rationale) (citing *Young*, 598 F.3d at 188)).

[39] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004)).

[40] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).

[41] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d at 467).

[42] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and brackets omitted).

59355

of 'further factual enhancement.'"[43] However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[44] In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[45] "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[46] On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[47]

### D. FLSA Claim

Plaintiff asserts a claim under the FLSA,[48] which Defendants challenge in their *Motion to Dismiss*.[49] The FLSA provides that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."[50] An employee bringing an action for unpaid overtime compensation must first demonstrate by a preponderance of the evidence: (1) that there existed an employer-employee relationship during the unpaid overtime periods claimed; (2) that the employee engaged in activities

---

[43] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).
[44] *Twombly*, 550 U.S. at 570.
[45] *Iqbal*, 556 U.S. at 678.
[46] *Taha v. William Marsh Rice University*, 2012 WL 1576099 at *2 (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).
[47] *Twombly*, 550 U.S. at 556 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).
[48] Rec. Doc. 1 ¶ 2, 5-18.
[49] Rec. Doc. 10-1 p. 9-13.
[50] 29 U.S.C. § 207(a)(1).
59355

<mark>

</mark>

within the coverage of the FLSA; (3) that the employer violated the FLSA's overtime wage requirements; and (4) the amount of overtime compensation due.[51]

### 1. Employment Relationship

The FLSA requires at the outset that there must exist an employer-employee relationship.[52] It provides that "[a]ny employer who violates [the Act] shall be liable to the employee or employees affected in the amount of . . . their unpaid overtime compensation."[53] The FLSA broadly defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee."[54] Defendants contend that Plaintiff's claim does not meet this first element, arguing that Plaintiff was not an employee, but an independent contractor.[55]

In determining whether the relationship between the parties is an employer-employee relationship or that of an independent contractor, courts use an "economic reality test," which considers whether the alleged employee is "economically dependent upon the alleged employer or is instead in business for himself."[56] This inquiry requires courts to "consider five non-exhaustive factors: (1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined

---

[51] *Johnson v. Heckmann Water Res. (CVR), Inc.*, 758 F.3d 627, 630 (5th Cir. 2014).
[52] *Johnson*, 758 F.3d at 630.
[53] 29 U.S.C. § 216(b).
[54] 29 U.S.C. § 203(d).
[55] Rec. Doc. 10-1 p. 9-11.
[56] *Hopkins v. Cornerstone America*, 545 F.3d 338, 343 (5th Cir. 2008) (citing *Herman v. Express Sixty-Minutes Delivery Serv., Inc.*, 161 F.3d 299, 303 (5th Cir. 1998)). *See also Goldberg v. Whitaker House Coop.*, 366 U.S. 28, 33 (1961); *Reich v. Circle C. Investments, Inc.,* 998 F.2d 324, 327 (5th Cir. 1993).
59355

by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship."[57]

The Court notes here that Defendants do not reference any relevant legal authority whatsoever in their *Motion*. Defendants reference a seven-factor test purportedly established by the Supreme Court without a citation to the case from which Defendants derived such a test.[58] This seven-factor test differs from the five-factor test the Defendants reference, also without citation, in another section of their *Motion*.[59] The test suggested by Defendants appears to mirror portions of the Fifth Circuit test that Plaintiff refers to in his *Opposition* and that has been verified by the Court.[60] The Court shall only consider those factors discussed above which are supported by legal authority.

First, the degree of control factor "is only significant when it shows an individual exerts such control over a meaningful part of the business that [the individual] stands as a separate economic entity."[61] This factor asks "whether 'the worker has a viable economic status that can be traded to other companies, keeping in mind that lack of supervision of the individual over minor regular tasks cannot be bootstrapped into an appearance of real independence.'"[62] Plaintiff alleges in the *Complaint* that Defendants

---

[57] *Hopkins*, 545 F.3d at 343 (citing *Herman*, 161 F.3d at 303). *See also Hobbs v. Petroplex Pipe and Construction, Inc.*, 946 F.3d 824, 829 (5th Cir. 2020) (citing *U.S. v. Silk*, 331 U.S. 704 (1947)); *Nieto v. Pizzati Enterprises, Inc.*, 2016 WL 692513 at *9 (E.D. La. 2016) (quoting *Reich v. Circle C. Investments, Inc.*, 998 F.2d 324, 327 (5th Cir. 1993)).

[58] Rec. Doc. 10-1 p. 9-10 ("To distinguish between independent contractors and employees, the Supreme Court considers such factors as (1) the extent to which the services rendered are an integral part of the principal's business; (2) the permanency of the relationship; (3) the amount of the contractor's investment; (4) the nature and degree of control by the principal; (5) contractor's opportunity for profit and loss; (6) the amount of competition with others; and (7) the degree of independent business organization and operation.").

[59] *Id.* p. 5.

[60] *See* Rec. Doc. 14 p. 6.

[61] *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 381 (5th Cir. 2019) (quoting *Usery v. Pilgrim Equip. Co., Inc.*, 527 F.2d 1308, 1312-13 (5th Cir. 1976)).

[62] *Id.*

59355

controlled his method and manner of work in addition to his work schedule.[63] However, control over a work schedule is not enough to support the degree of control factor, which requires such control held by the worker such that the workers "stands as a separate economic entity."[64] Plaintiff does not allege any further facts demonstrating how or in what way Defendants controlled his work. An assertion in a complaint is insufficient if it is only a "naked assertion" without any "further factual enhancement,"[65] or if it is a "legal conclusion couched as a factual allegation."[66] Recitations of the elements of a cause of action are insufficient to withstand scrutiny under Rule 12(b)(6).[67] Here, as to the degree of control factor, Plaintiff has failed to allege any facts that amount to anything other than conclusory statements and recitations of the elements. This factor therefore does not weigh in favor of an employer-employee relationship. In *Lang v. DirecTV, Inc.*, the plaintiffs alleged the following facts in a declaration attached to their complaint in support of their assertion that an employer-employee relationship existed:

> First, with regard to DirecTV, Plaintiffs Lang and Humphreys allege that DirecTV controlled their daily routines. They allege that DirecTV set the rate of compensation for each job, monitored their performance, and ultimately controlled their receipt of wages. Moreover, they claim that DirecTV and JP & D conducted background checks and drug tests at facilities of their choice. Humphreys also alleges in his declaration that he was required to wear a DirecTV uniform, give clients DirecTV paperwork, and have a DirecTV logo on his vehicle. He also alleges that he installed only DirectTV equipment. In addition, Lang and Humphreys allege that DirecTV had the power to determine whether they were employed as installers of DirecTV equipment. Plaintiffs further allege that the defendants orchestrated a "charge-back" scheme to deprive them of earned wages and that the charge-back and underpayment scheme

---

[63] Rec. Doc. 1 ¶15.
[64] *Parrish*, 917 F.3d at 381 (quoting *Usery*, 527 F.2d at 1312-13).
[65] *Iqbal*, 556 U.S. at 678.
[66] *Twombly*, 550 U.S. at 555 (quoting *Papasan*, 478 U.S. at 286).
[67] *Id.*

59355

originated with DirecTV. The allegations of DirecTV's control over the technicians, including control of their compensation, work assignments, and uniforms, all tend to indicate that the plaintiffs were employees of DirecTV.[68]

The *Lang* court found that the plaintiffs had alleged sufficient facts for the degree of control factor to weigh against dismissal under Rule 12(b)(6).[69] There are no such alleged facts here to support the degree of control factor for Plaintiff's claim.

Second, the extent of investments factor requires a comparison of the worker's individual investment to the investment of the alleged employer.[70] Plaintiff directs the Court to paragraph fifteen of his *Complaint*, in which he states, in pertinent part, that "Defendants . . . had a much larger investment in comparison to Mr. Cataldie, relative to the work performed."[71] Again, this is a mere recitation of the elements, which is insufficient under *Iqbal* to support the extent of investments factor.[72] In contrast to Plaintiff's sparsely alleged facts, the Court considers the plentifully alleged facts in *Hopkins v. Cornerstone America*, in which the district court found that "the relative-investment factor . . . weighs heavily in favor of employee status for Plaintiffs,":[73]

> Defendants argue that "Plaintiffs' relative investments were significant." Plaintiffs were required to lease their own office space, purchase their own office equipment (phone, computer, office supplies, facsimile machine, etc.) procure and maintain their own licenses, pay for any assistants they hired such as office aids or secretaries, and pay for any advertising costs.
>
> Plaintiffs counter, "There is no question that the amount of money Defendants invested into their business far outweigh[s] the investments made by any of these individual Plaintiffs." Plaintiffs

---

[68] 735 F.Supp. 2d 421, 433 (E.D. La. 2010).
[69] *Lang*, 735 F.Supp. 2d at 433.
[70] *Hopkins*, 545 F.3d at 344 (citing *Herman*, 161 F.3d at 304).
[71] Rec. Doc. 1 ¶ 15; Rec. Doc. 14 p. 8.
[72] *See Iqbal*, 556 U.S. at 678.
[73] 512 F.Supp. 2d at 689.
59355

point out that Defendants admit they invested significantly into their businesses. Defendants are large companies "with an infrastructure designed to underwrite, administer, and pay claims of the insurance products sold by Plaintiffs." In fact, Defendants invest a significant amount into corporate offices, personnel, accounting department, human resources, printing brochures, printing the contracts Plaintiffs and other agents sign, creating and paying for training sessions for agents, and creating and developing the insurance policies available for sale. When compared to Plaintiffs, there is no question that Defendants invest far more into the insurance sales business than any one of the Plaintiffs.[74]

Unlike in *Hopkins*, there are simply no facts alleged by Plaintiff to support the extent of investments factor as weighing in favor of an employment relationship.

Third, the opportunity for profit or loss factor examines "whether the worker or the alleged employer controlled the 'major determinants in the amount of profit which the [worker] could make.'"[75] A worker paid by wages is more likely to be an employee than a worker paid by a profit, or a return on an investment.[76] The *Complaint* alleges that Plaintiff was paid wages in the amount of "$500.00 per day, and a 'weekend' rate of $1,000.00 per day. Additionally, Mr. Cataldie was paid, or to be paid, $75.00 per completed psychiatric evaluation."[77] Consequently, because Plaintiff has alleged that he was paid wages rather than profit, Plaintiff has pled facts that support the opportunity for profit or loss factor weighing in favor of an employer-employee relationship.

Fourth, the skill and initiative factor pertains to "some unique skill set . . . or some ability to exercise significant initiative within the business."[78] While a more unique skill set

---

[74] *Hopkins*, 512 F.Supp. 2d at 689 (citations omitted).
[75] *Hopkins*, 545 F.3d at 344 (quoting *Usery*, 527 F.2d at 1313).
[76] *Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042, 1050 (5th Cir. 1987).
[77] Rec. Doc. 1 ¶ 6.
[78] *Hopkins*, 545 F.3d at 345 (citing *Carrell v. Sunland Constr., Inc.*, 998 F.2d 330, 333 (5th Cir. 1993) (finding pipe welding to be a special skillset); *Hickey v. Arkla Industries, Inc.*, 699 F.2d 748, 752 (5th Cir. 1983) (finding plaintiff-salesman to have significant initiative in advertising, marketing, and choice of products to sell)).

lends in favor of an independent contractor relationship, "[r]outine work which requires industry and efficiency is not indicative of independence and nonemployee status."[79] The only fact alleged in the *Complaint* that support this factor is Plaintiff's profession as a nurse practitioner.[80] There are no facts alleged to indicate that Plaintiff's success depended on Plaintiff's initiative, but as Defendants point out, Plaintiff is required to have special licensing and certifications as a nurse practitioner,[81] indicating some degree of a specialized skills. Moreover, Defendants highlight that Plaintiff was responsible for non-generalized tasks, including patient assessment and diagnosis, physical examinations, interventions, and prescriptive privileges.[82] On balance the Court finds that the Plaintiff has alleged sufficient facts to support the skill and initiative factor.

Finally, the permanency of the working relationship factor considers the consistency of the working relationship between the parties geographically and temporally.[83] Plaintiff alleges that his working relationship began on July 1, 2018 and lasted until January 20, 2019,[84] a period of time totaling six months. However, throughout the course of his working relationship with Defendants, Plaintiff alleges that he consistently worked more than forty hours per week.[85] Nonetheless, the permanency of the working relationship factor typically weighs in favor of an employment relationship

---

[79] *Usery*, 527 F.2d at 1314.
[80] Rec. Doc. 1 ¶ 6.
[81] *See* Rec. Doc. 10-1 p. 10-11.
[82] *Id.* at p. 11 (citing Rec. Doc. 10-2 ¶ 1.5). Although Rec. Doc. 10-2, the Nurse Practitioner Professional Services Agreement, is not present in the *Complaint* itself, the document is incorporated in the *Complaint* by reference, as Plaintiff refers to the agreement between himself and Seaside on multiple occasions. *See* Rec. Doc. 1 ¶ 10, 26, 29, 31. *See also Sebelius*, 635 F.3d at 763 (permitting the Court to consider "documents incorporated into the complaint by reference" in deciding a Rule 12(b)(6) motion).
[83] *See Carrell*, 998 F.2d at 332.
[84] Rec. Doc. 1 ¶ 5, 27.
[85] Rec. Doc. 1 ¶ 8.
59355

when the worker remains in a position for "a significant period of time" or "for several years,"[86] which is more than the short six-month period worked by Plaintiff. Moreover, the term of the agreement between Plaintiff and Defendants only provides for one year.[87] The permanency factor also considers the ease of termination,[88] and here, Plaintiff's agreement with Defendants provides that Plaintiff could be terminated without cause with thirty days written notice. Because of the short duration of the working relationship, and because of the ability for Defendants to terminate the working relationship at-will, the permanency of the working relationship factor does not weigh in favor of an employment relationship.

The five factors utilized by the Fifth Circuit are non-exhaustive, and no single factor is determinative in the analysis.[89] As to the Defendants' argument regarding the section of the agreement titled "Independent Contractor Relationship,"[90] "the label attached to the relationship is dispositive only to the degree that it mirrors the economic reality of the relationship."[91] Ultimately, the Court is tasked with determining the overall economic dependence of the alleged employee.[92] In summary, the Court finds that the Plaintiff has alleged facts supporting two factors weighing in favor of an employment relationship: the opportunity for profit or loss factor, and the skill and initiative factor. After examining the

---

[86] *Hopkins*, 545 F.3d at 346 (where workers had retained their position for many years, ranging from two-and-a-half to thirteen years); *Hickey*, 699 F.2d at 752 (where worker had retained his position for ten years).
[87] Rec. Doc. 10-2 ¶ 3.
[88] *Hickey*, 699 F.2d at 751-52 ("With respect to the permanency of his relationship with Arkla, Hickey, notwithstanding his tenure of ten years, was capable of terminating relations with Arkla upon 30 days' notice and taking his business organization and talents to other manufacturers of similar or different products.).
[89] *Brock*, 814 F.2d at 1043-44.
[90] Rec. Doc. 10-1 p. 10.
[91] *Donovan v. Tehco, Inc.*, 642 F.2d 141, 143 (5th Cir. 1981) (citing *Usery*, 527 F.2d 1308).
[92] *Hopkins*, 545 F.3d at 343 (citing *Brock*, 814 F.2d at 1043-44).
59355

allegations of the Complaint against the five factors the Court finds that there are simply not enough facts alleged by the Plaintiff to support the conclusion that the overall economic reality of the working relationship between Plaintiff and Defendants was that of an employer-employee relationship such that Plaintiff was economically dependent on Defendant. Consequently, the Court finds that Plaintiff has failed to allege facts sufficient to state a claim under the FLSA "that is plausible on its face."[93] Plaintiff's FLSA claims shall be DISMISSED without prejudice, subject to Plaintiff's right to amend his *Complaint*.

### 2. Learned Professional Exemption

Defendants contend that, in any event, Plaintiff falls within the "learned professional" exemption to the FLSA. "[C]ourts are to give FLSA exemptions 'a fair reading,'"[94] and defendants have the burden of proving the exemption's application.[95] The learned professional exemption includes any employee:

> (1) Compensated on a salary or fee basis . . . at a rate of not less than $684 per week . . exclusive of board, lodging or other facilities; and
> (2) Whose primary duty is the performance of work:
> (i) Requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction; or
> (ii) Requiring invention, imagination, originality or talent in a recognized field of artistic or creative endeavor.[96]

---

[93] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Martin*, 369 F.3d at 467).
[94] *Carley v. Crest Pumping Technologies, L.L.C.*, 890 F.3d 575 (5th Cir. 2018) (quoting *Encino Motorcars, LLC v. Navarro*, --- U.S.---, ---, 138 S.Ct. 1134, 1142 (2018).
[95] *Isett v. Aetna Life Ins. Co.*, 947 F.3d 122, 128 (5th Cir. 2020) (citation omitted).
[96] 29 C.F.R. § 541.300 (2018). The Court recognizes that, at the time of the facts in dispute, the effective regulation limited the pay rate to $455 per week. While it makes no difference for the Court's analysis, the Court notes that, effective January 1, 2020, the pay rate increased from $455 per week to $684 per week. *See* 29 C.F.R. § 541.300 (2020).

Here, Plaintiff does not contest the work duties element of the exemption,[97] so the application of the exemption hinges on the rate of pay element. Defendants argue that the exemption applies because Plaintiff earns more than $455 per week and because Plaintiff is compensated on a fee basis. Plaintiff stipulates that he earns more than $455 per week—he is paid at a rate of $500 per weekday[98]— but correctly argues that he is paid according to a "day-rate" rather than on a fee basis.[99] Indeed, § 541.605(a) plainly states that "[p]ayments based on the number of hours or days worked and not on the accomplishment of a given single task are not considered payments on a fee basis."[100] Plaintiff is therefore not paid on a fee basis; the issue, then, is whether Plaintiff is salaried.

The Court notes that the question of whether an employee paid at a rate per day worked is paid on a weekly or less frequent basis is one that has been resolved by the Sixth Circuit but has not been authoritatively resolved by the Fifth Circuit. In *Hughes v. Gulf Interstate Field Services, Inc.*, the Sixth Circuit held that, due to a change in regulatory language, this inquiry turned on what compensation the worker actually received rather than the amount provided in the employment agreement.[101] In *Faludi v. U.S. Shale Solutions, L.L.C.*, the Fifth Circuit originally held that the plain text of the regulation inquired into the amount of compensation actually received, particularly in light of the frequency of pay provided for in the contractor agreement.[102] However, that opinion was later withdrawn and superceded by an opinion in which the Fifth Circuit declined to

---

[97] Rec. Doc. 14 p. 9. The Court notes that certified nurse practitioners perform eligible work duties for the learned professional exemption according to 29 C.F.R. § 541.301(e)(2). *See* Rec. Doc. 10-1 p. 13.
[98] Rec. Doc. 1 ¶ 6. The agreement between Plaintiff and Defendants suggests the same rate of pay. Rec. Doc. 10-2 p. 13.
[99] Rec. Doc. 14 p. 9.
[100] 29 C.F.R. § 541.605(a).
[101] 878 F.3d 183 (6th Cir. 2017).
[102] 963 F.3d 215, 219-20 (5th Cir. 2019).
59355

decide the exemption issue, stopping at the beginning of the analysis by concluding that the plaintiff was an independent contractor.[103]

Considering *Faludi*, because the Court has found that Plaintiff has failed to allege facts demonstrating an employer-employee relationship, the Court declines to decide whether Plaintiff meets the requirements for a learned professional at this time.

### E. State Law Claims

Defendants do not present arguments challenging Plaintiff's state law claims; however, Defendants ask the Court to dismiss Plaintiff's *Complaint* for failure to state a claim and for lack of subject matter jurisdiction.[104] Because the Court has found that Plaintiff has failed to allege facts sufficient to support his federal law claims, the Court will not decide whether to exercise supplemental jurisdiction over Plaintiff's state law claims in the present procedural posture. Therefore, the Court will not at this time address Defendants' challenge to Plaintiff's standing to bring a breach of contract claim in Plaintiff's individual capacity.[105] Defendants' *Motion* is deferred as to Plaintiff's state law claims.

---

[103] *Faludi v. U.S. Shale Solutions*, L.L.C., --- F.3d ---, ---, 2020 WL 747225 at *5 (5th Cir. 2020).
[104] Rec. Doc. 10-1 p. 13.
[105] *See* Rec. Doc. 10-1 p. 7.
59355

### III. CONCLUSION

Accordingly, Defendants' *Motion to Dismiss*[106] is GRANTED in part and deferred in part. Plaintiff's federal law claims against Defendants are dismissed WITHOUT PREJUDICE. The Court defers addressing Plaintiff's state law claims at this stage in the litigation; therefore, that part of Defendant's *Motion*[107] is DENIED without prejudice. Plaintiff shall have twenty-one (21) days from the date of this *Ruling* to amend his *Complaint* to cure the deficiencies noted herein. Failure to amend by this deadline will result in a dismissal of all claims with prejudice.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on March 23, 2020.

_____
**CHIEF JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[106] Rec. Doc. 10.
[107] *Id.*
59355